Commou-<br>wealth<br>v.<br>Bolkom.

---

## HUMPHREY DAVIS *et ux. versus* ROUNSEVILLE SPOONER.

284

Where a grantor of land having obtained possession surreptitiously of the deed, pretending that he would get it recorded, conveyed the land again to a person who had knowledge of the former conveyance, it was *held*, in an action by the heir of the first grantee against the second, that the demandant, having traced the deed into the hands of the grantor, might give parol evidence of its contents without calling him as a witness, though released by the tenant, to prove its loss, or showing that it was not in the register's office; and that not knowing who were the subscribing witnesses, he was not bound to prove their handwriting; and that the declarations of the second grantee previous to the second conveyance, were admissible to show such conveyance to be fraudulent.

Where a lost deed is not proved to have been destroyed, but only mislaid, *it seems* that the party should make affidavit that he has not been able to find it.

THIS was a writ of entry to recover certain land called "The White farm," and the demandants counted upon the seisin of Walter Spooner, to whom Alden Spooner, his father, had conveyed the land, and a descent to Mrs. Davis as the only child and heir of Walter, and upon an entry of the tenant after an abatement by Alden and a conveyance by him to the tenant.

The tenant pleaded, 1st, that Walter did not die seised ; upon which issue was joined ; and 2dly, that the tenant, at the time of the conveyance to him, did not know that Alden had previously conveyed the land to Walter ; to which there was a replication that he did know of it ; and thereupon issue was joined

The cause was tried before *Lincoln* J. On the part of the

---

[3] See Revised Stat. *c.* 47, § 17.

See *Commonwealth* v. *Arnold*, 4 Pick. 251

demandants, one Haskell testified, that soon after Walter , death, which was in 1808, he went to see his widow, who was a sister of the witness ; that she showed him two deeds purporting to be made by Alden to Walter, and to be attested by three subscribing witnesses and acknowledged before Seth Spooner, justice of the peace ; that he read the deeds and proposed to take them and have them put on record, but she objected, saying her father Spooner would be offended, and that he delivered them back to her and had never seen them since.    Upon cross-examination the witness said he did not remember the names of either of the subscribing witnesses, nor the date of the deeds.

Betsey Howard, who was the widow of Walter Spooner, having released to the demandants her right of dower, and being admitted as a witness, testified to some of the facts before stated, and that she objected to the proposition to have the deeds recorded, because, as she expected her father Spooner would administer on her husband's estate, she was afraid he would be offended if she meddled with the papers. On cross-examination she was asked, how she knew the papers were deeds from Alden to Walter.    She answered that they looked like deeds ; that she remembered there was written on the back of one of them, " Deed of the White farm from Alden Spooner to Walter Spooner," but she did not know when or by whom it was written ; that she had no recollection of ever opening the papers, but only remembered the external appearance and the filing.    She further testified, that a short time after her interview with her brother, Alden came to her house and asked permission to go to his son's desk, as there were papers there relating to his son's business as a deputy sheriff, which were wanted ; that while he was at the desk he took up the deeds and said, " What, has not Walter got these deeds recorded," and then said he would take them and get them recorded ; and that this was the last she ever saw of them.

The demandants again called Haskell to prove the handwriting of Alden in the execution of the deed, and to prove the contents of the deed.    The tenant objected, that having proved that the supposed deed was in the hands of Alden,

*t*ney must call on him to produce it, or show that it had been lost or destroyed ; that he was then in court, and was a competent witness for the demandants, if not objected to on the part of the tenant ; and that resort could not be had to proof of the handwriting of the grantor, without first calling the subscribing witnesses, or proving that they were dead or out of the reach of process. These objections were overruled.

The demandants called several witnesses to the declarations of Alden before the conveyance to the tenant, that he had given the White farm to his son Walter. The tenant objected to this evidence, but the objection was overruled. To resist this evidence the tenant called Alden, who testified that he never gave a deed to Walter

A verdict was returned in favor of the demandants, and the legal effect of all these objections on the part of the tenant was reserved for the consideration of the whole Court.

*L. Williams* for the tenant. The deed should have been proved to be lost, and by the best evidence which the case would admit, before parol evidence of its contents was received. *The King* v. *Castleton*, 6 T. R. 236 ; *Jackson* v. *Hasbrouck*, 12 Johns. R. 192 ; *Jackson* v. *Frier*, 16 Johns. R. 193 ; *Little* v. *Lessee of Delancey*, 5 Binney, 267 ; *Jackson* v. *Todd*, 3 Johns. R. 300. The presumption was that it existed either in Alden's hands or in the register's office. The demandants should therefore have called upon Alden to produce it ; and if he had said there was no deed in his hands, they should then have shown that they had made inquiry of the register. Alden had been released by the tenant, and his testimony used at a former trial ; he was therefore a competent witness for the demandants, if the tenant did not object to him. For any thing that appears, the deed has been recorded and redelivered to the party entitled to it.

In regard to the subscribing witnesses, it does not follow that because Haskell did not know who they were, the demandants also were ignorant. They should have made an affidavit to that effect. *Blanton* v. *Miller*, 1 Haywood, 4 ; *Park* v. *Cochran*, ibid. 410.

*Holmes* and *W. Baylies, contrà.* The demandants were not at liberty to call Alden as a witness to testify to his own

Davis
*v.*
Spooner.

infamy. *Storer* v. *Batson*, 8 Mass. R. 440 ; 3 Dane's Abr. 296 ; *Rex* v. *Lewis*, 4 Esp. R. 225. But if he was a competent witness, they were not bound to make use of his testimony. *Bridge* v. *Eggleston*, 14 Mass. R. 249. Since however he was called by the tenant and testified that he never gave to his son a deed of the land in question, our neglect to call him amounts to nothing more than irregularity ; which is not a ground for a new trial. As we did not know who were the subscribing witnesses, and were prevented from knowing it by the misconduct of the grantor himself, who is identified with the tenant, we were not obliged to prove their handwriting. The acknowledgment of the party has frequently been considered as evidence of the execution of a deed. *Bowles* v. *Langworthy*, 5 T. R. 366 ; *Hall* v. *Phelps*, 2 Johns. R. 451.

*H. Cushman* in reply. Evidence of the declarations of Alden having been admitted, although objected to at the time, we were obliged to call him, in order to rebut such evidence, and if it was the duty of the demandants to make him their witness, the tenant ought to be placed in as good a situation as if they had done it. The declarations were not admissible before he had testified, but only to contradict his testimony.

*Nov.* 18*th*

PARKER C. J. delivered the opinion of the Court to the following effect. The first question is, whether there was such proof of the loss of the deed as to authorize the admission of parol evidence to prove its contents. In some cases the proof may be very satisfactory that a deed is lost, as where it has been burnt ; in others the evidence may be very uncertain, as where it only appears that the party cannot find the deed. In this latter class the rule that the party shall make affidavit, though not practised upon with us, seems to be proper enough ;[1] for it is not admitting him to testify in his own

---

[1] A party to a suit may be a competent witness to prove the loss of a deed or record, for the purpose of letting in secondary evidence ; but not to prove the contents of the deed or record. *Adams* v. *Leland*, 7 Pick. 62; *Taunton Bank* v. *Richardson*, 5 Pick. 436; *Hewes* v. *Wiswell*, 8 Greenl. 94; *Jackson* v. *Frier*, 16 Johns. R. 193; *Chamberlain* v. *Gorham*, 20 Johns. R. 144; *Meeker* v. *Jackson*, 3 Yeates, 442; *Seekright* v. *Wright*, 1 Haywood, 178; *Garland* v. *Goodloe*, 2 Haywood, 351 ; *Tayloe* v. *Riggs*, 1 Peters, 591 · *Blade* v. *Noland*,

ᴄause, but only admitting him to the privilege of using other evidence. If then this were a case of a deed being merely mislaid, perhaps we should require the demandants' affidavit. The testimony however of Mrs. Howard shows a surreptitious taking of the deed. The jury have found that it came into the hands of Alden Spooner wrongfully. If the action were against him, the demandants would recover by showing that fact, without any further evidence ; and it is found that the tenant knew of the first conveyance before he purchased. This exhibits a different case from one in which the deed is supposed to be lost. The tenant knowing that the deed to Walter Spooner existed, he stands in the same situation with his grantor, and must be presumed to know how the deed came into his hands. This then is a case·which precludes the necessity of going to the register of deeds and getting his certificate that the deed was not in his office, or of making affidavit ; and it would be a mockery of justice to require the party, who is injured by a fraudulent transaction, to call the fraudulent person to testify.

**288**

As to the declarations of Alden, what he said at the time of taking the deed out of the desk was a part of the *res gestæ ;*[1] his other declarations, considering that the tenant knew of the conveyance to Walter, were admissible within the principle of *Bridge* v. *Eggleston.*[2]

*Judgment according to the verdict.*

---

12 Wendell, 175. But see *Coleman* v. *Wolcott,* 4 Day, 388 ; *Cotton* v. *Beasley,* 1 Carol. Law Repos. 239 ; *Wright* v. *Jacobs,* 1 Aiken, 304.

[1] 1 Stark. Evid. (5th Amer. ed.) 62 *et seq. ;* Roscoe's Dig. Crim. Evid. 20 to 23; *Little* v. *Libby,* 2 Greenl. 242; *Kimball* v. *Morrell,* 4 Greenl. 368, *Gorham* v. *Canton,* 5 Greenl. 266 ; *State* v. *Powell,* 2 Halsted, 244 ; *Bennet* v. *Hethington,* 16 Serg. & Rawle, 193; *Sewall* v. *Sewall,* 8 Greenl. 194.

[2] *Foster* v. *Hall,* 12 Pick. 99, 100. See *Cook* v. *Swan,* 5 Connect. R. 144; *Reichart* v. *Castator,* 5 Binney, 109; 1 Stark. Evid. (5th Amer. ed.) 302 n. (1)